## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| Stephen Glad | * | Case No. 3:22-cv-1963 |
| 5764 Swan Creek Drive | | |
| Toledo, Ohio 43614 | * | |
| | | Judge |
| | * | |
| Plaintiff, | * | Magistrate Judge |
| | | |
| v. | * | |
| | | |
| ProMedica Health System, Inc. | * | **COMPLAINT** |
| C/O CT Corporation System | | |
| 4400 Easton Cmns Way, Ste 125 | * | **JURY DEMAND ENDORSED HEREON** |
| Columbus, Ohio 43219 | | |
| | * | |
| Defendant. | | |
| | * | |

Now comes Plaintiff Stephen Glad ("Plaintiff"), through undersigned counsel, for his Complaint against Defendant ProMedica Health System, Inc. ("Defendant"), who hereby states as follows:

### I.   INTRODUCTION

1.   This is an action to remedy disability discrimination in violation of Title I of the 42 U.S.C. § 12112, *et seq.*, of the Americans with Disabilities Act of 1990 ("ADA"), as amended ("ADAAA"), and Ohio Revised Code § 4112, *et seq.* ("Chapter 4112"). Due to Defendant's failure to engage in the interactive process, failure to accommodate, and retaliation against Plaintiff for requesting an accommodation, Plaintiff has suffered a loss of wages, emotional distress, benefits, attorney's fees, and other non-pecuniary losses as indicated herein to which Defendant is liable under the ADA and Chapter 4112.

2.   Plaintiff also seeks relief under Title III of the ADA for non-compliant facilities that Defendant owns and operates ProMedica Toledo Hospital ("Toledo Hospital"), located at

2142 N. Cove Blvd., Toledo, Ohio 43606, a place of public accommodation as defined by Title III of the ADA and its accompanying regulations, 28 C.F.R. §§ 36.201(a) and 36.104, which contains barriers to access.

3.     Additionally, this action seeks to remedy violations of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.*, ("FMLA"). Due to Defendant's interference with Plaintiff's FMLA rights, Plaintiff has suffered a loss in benefits to which he was entitled, including but not limited to the forced use of the FMLA due to Defendant's failure and refusal to reasonably accommodate him, as more fully outlined herein. As such, Plaintiff is entitled to payment of his damages, equitable relief, including, but not limited to a declaratory judgment and/or injunctive relief, liquidated damages, and attorney's fees and costs under 29 U.S.C. § 2617(a).

## II.  <u>JURISDICTION AND VENUE</u>

4.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 for violations of the ADA and FMLA. This court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 as they are so closely related to these federal law claims that they form the same case and controversy under Article III of the United States Constitution.

5.     Venue is proper in this forum pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Ohio, Western Division.

## III.  <u>PROCEDURAL REQUIREMENTS</u>

6.     More than 180 days have passed since Plaintiff filed a formal Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC"), Charge Number: 22A-2021-02727, and the Ohio Civil Rights Commission ("OCRC"), Charge Number TOLB2(41111).

7.    Upon investigation, the OCRC issued a Letter of Determination that concluded it was **probable** that Plaintiff suffered discrimination based on his disability and retaliation from Defendant concerning the events at issue. A copy of the OCRC's Letter of Determination is attached as Exhibit A.

8.    Subsequently, on August 4, 2022, the EEOC issued a Notice of Right to Sue against Defendant, in accordance with 42 U.S.C. § 2000e-5(f)(1), for Plaintiff's claims under Title I of the ADA.  A copy of the Right to Sue is attached as Exhibit B.

9.    Plaintiff has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b) and filed this Complaint within 90 days of issuance of the Notice of Right to Sue letter concerning the charge. Plaintiff has accordingly satisfied all procedural requirements prior to commencing this action in federal court.

### IV.  <u>PARTIES</u>

10.    At all times relevant, Plaintiff was a person who resided within this judicial district and employed by Defendant, as is defined under the ADA and Chapter 4112. Further, Plaintiff was an eligible employee within the meaning of the FMLA because he was employed by Defendant other than in domestic service for at least twelve (12) months and for at least 1,250 hours of service during the twelve (12) months before he took FMLA leave and was employed at a worksite where fifty (50) or more employees are employed within seventy-five (75) miles of that worksite. *See* also 29 C.F.R. § 825.110.

11.    Plaintiff is also qualified individual with a disability as defined by Title III of the ADA, as defined by 42 U.S.C. § 12102(2) and 28 C.F.R. § 36.104.

12.    ProMedica is an Ohio non-profit corporation, which conducts business in this judicial district, as it provides healthcare throughout Northwest Ohio. At all times relevant hereto, Defendant has been an employer of Plaintiff as that term is defined by the ADA and Chapter 4112.

Further, Defendant is an eligible employer within the meaning of the FMLA because it is engaged in commerce or in any industry or activity affecting commerce that employs or employed at least fifty (50) or more employees at or within a 75-mile radius of the Plaintiff's worksite for each working day during each of 20 or more calendar workweeks in the year of or the calendar year preceding the events giving rise to this cause of action. Additionally, Defendant's Toledo Hospital, which it owns and operates as a place of public accommodation as defined by the ADA and its implementing regulations, including but not limited to 28 C.F.R. § 36.201(a) and 36.104, has failed to comply with its obligations under the ADA as otherwise described herein.

## V.  FACTS

13.  Plaintiff began working for Defendant in 1994. In 1999, Plaintiff began working in the Child Life Department ("Child Life Department") of the Russel J. Ebeid Children's Center located at Toledo Hospital.

14.  Plaintiff remains employed as a Child Life Coordinator for Defendant. His primary job duties consist of assisting pediatric patients with their technology needs, maintaining gaming systems and other technology that the hospital provides for patient use, and ordering necessary supplies for the Child Life Department.

15.  Plaintiff is a disabled individual, and his disability is obvious and apparent as he uses a motorized wheelchair[1] to assist him due to his disability. Plaintiff's wheelchair assists him in moving throughout the hospital to perform his job duties.

---

[1] Plaintiff's motorized wheelchair consists of an Invacare TDX SP2 Power Wheelchair, which measures at a base length of 35.6" long, 24" W narrow, 25.5" W wide, with a seat to floor height of approximately 18", and a turning radius of 20" with ground clearance of approximately 2.5"

16.   Due to his disability, Plaintiff is substantially limited in one or more of his major life activities, including but not limited to walking, standing, bending, lifting, and grasping/use of his hands.

17.   As a result of Plaintiff's dependence on his wheelchair, he requires brief periods of respite where he can lean back in his motorized wheelchair to relieve the pressure from his neck, shoulders, spine, and buttocks. This also allows for the prevention of skin sores and skin irritations caused by prolonged sitting in his wheelchair.

18.   As such, from 2009 until approximately June 2021, Plaintiff's previous supervisor provided him with a reasonable accommodation in the form of a private office space at Toledo Hospital that contained sufficient space to enable Plaintiff to stretch out as needed and had nearby access to an ADA compliant restroom.

19.   The Child Life Department is divided between separate areas of Toledo Hospital. On the fifth floor of the Legacy Building in what is known as "Legacy 5 North,"[2] there are the pediatric support areas, the Child Life Department office ("Child Life Office"), a library, and a playroom. On the eighth floor of the Renaissance building, there are additional patient units and a playroom. The fourth floor of the Renaissance building and the fifth floor of the Legacy Building are connected on the same level by a hallway.

20.   Plaintiff's private office was located on the fifth floor of the Legacy Building in an area known as "Legacy 5 South," and he easily accessed the pediatric units and support areas of the Child Life Department through the hallway from Legacy 5 South.

21.   However, in March 2021 or early April 2021, Danielle Sosko ("Ms. Sosko"), Associate Vice President of Patient Care Services for Defendant, informed Plaintiff that he would

---

[2] Upon information and belief, Toledo Hospital has completed renovations since the commencement of the underlying charge of discrimination and investigation, so the names of the floors in Toledo Hospital may be different.

no longer be able to utilize his private office and would be relocated to the Child Life Office, a shared office space located elsewhere within the hospital. At this time, Ms. Sosko informed Plaintiff that the reason for the move was the construction within Toledo Hospital.

22.    Given Defendant's planned move, Plaintiff became concerned about his ability to perform the essential functions of his position due to the limited size of the Child Life Office because the space would be shared between various individuals, volunteers, and it was also used as a storage space. Specifically, Plaintiff believed that he would no longer have sufficient space to be able to stretch out as needed, privately, in order to reduce pressure points. Additionally, Plaintiff would not have the proper and ADA compliant space to maneuver in his wheelchair in the Child Life Office.

23.    On April 20, 2021, Plaintiff requested that he be permitted to retain a private office, that the move be postponed so that his concerns would be addressed appropriately, and that he be reasonably accommodated with a suitable space that could fully accommodate his individualized needs because of his disability. Defendant was aware of Plaintiff's April 20, 2021 request for an accommodation.

24.    Despite obvious notice of Plaintiff's disability and need for continued accommodation, Ms. Sosko instructed Plaintiff to complete a formal request with Defendant's Human Resources Department regarding his requested accommodation.

25.    On April 26, 2021, Plaintiff completed and submitted the Accommodation Request Form noting that ample space is required for him to be able to stretch out regularly to prevent the painful breakdown of his skin on his neck, shoulders, spine, and buttocks caused by his necessary use of a motorized wheelchair.

26.    Subsequently, on June 16, 2021, Ms. Sosko informed Plaintiff through written correspondence that Defendant would no longer accommodate him with his prior accommodations

and denied his request for a reasonable accommodation moving forward. He was then relocated to the shared workspace of the Child Life Office.

27. Upon his relocation to the Child Life Office, Plaintiff learned that his shared office space was not ADA compliant and was insufficient to accommodate his individualized needs. Additionally, the Child Life Office was not near an ADA compliant restroom. The restroom closest to the Child Life Office is in a public area of Toledo Hospital and contains barriers to access, as otherwise detailed herein. Said barriers are an ongoing impediment to Plaintiff's ability to use the restroom. As a result, and as Defendant is aware, Plaintiff has suffered unnecessary humiliation and embarrassment after soiling himself on more than one occasion.

28. The Child Life Office is behind a heavy fire door that Plaintiff has difficulty operating given his physical limitations. In fact, on at least one occasion Plaintiff suffered a workplace injury when he was unable to open the fire door during a fire drill and became trapped. Plaintiff filed a workplace injury report, but, to this day, no efforts have been made to eliminate this barrier to access.

29. Based on these experiences, Plaintiff again reiterated his concern regarding his ability to stretch out in his wheelchair as needed. In response, Plaintiff told that he could use the Child Life Office to stretch, access the Child Life Department library "when it was available," or he could travel to a patient consult room on the fourth floor of the Renaissance Building when the library was in use. All "accommodations" presented by Defendant fail miserably to reasonably accommodate Plaintiff.

30. Given these ongoing concerns, Plaintiff again requested an office with sufficient space as a reasonable accommodation for his disability. Plaintiff proposed the former teen lounge within the Child Life Department as it was only used occasionally for clinical simulations. The teen lounge had enough space to maneuver his wheelchair, he would be able to stretch out as

needed in private, it had access to a nearby ADA compliant restroom, and the teen lounge did not have a fire door. Nevertheless, Defendant denied this reasonable request, deeming the teen lounge "too large for one person" though Defendant only occasionally used it. After Plaintiff's accommodation request to use the teen lounge, Defendant moved the pediatric hospitalist providers into the space.  Defendant refused to allow Plaintiff to use the teen lounge at all.

31.  Plaintiff then requested a nearby patient consultation room within the Child Life Department as an accommodation. Again, Defendant denied this reasonable request. Defendant offered Plaintiff the use of a cubicle space located outside of a nurse's station located in the Renaissance Building, "Ren 4 East." Upon inspection, Plaintiff learned that the space would not only be insufficient to accommodate his motorized wheelchair, but that it was also fully visible to the public.

32.  As a result of the foregoing, Plaintiff was forced to unnecessarily utilize medical leave under the FMLA for his serious medical conditions arising from Defendant's failure to provide a reasonable accommodation.

33. To this day, Defendant has failed to provide Plaintiff with a reasonable accommodation.

34.  Defendant has failed to provide Plaintiff with access to an ADA compliant restroom, even though Toledo Hospital has purportedly undergone extensive renovations.

35.  Defendant's unlawful actions continue to force Plaintiff to unnecessarily utilize FMLA leave for his serious health conditions resulting from Defendant's failure to accommodate.

36.  To this day, Defendant has failed to meaningfully engage in the interactive process as it categorically denied each of Plaintiff's requests for a reasonable accommodation. If Defendant presented an alternative accommodation, said accommodation was glaringly inadequate on its face.

## CAUSES OF ACTION

### COUNT I
**(ADA Discrimination - 42 U.S.C. § 12101, *et seq.*)**

37.   All of the preceding paragraphs are realleged as if fully rewritten herein.

38.   At all times material herein, Plaintiff was disabled, had a record of being disabled, and/or was perceived as being disabled, as defined in 42 U.S.C. § 12112, *et seq.*, of Title I of the ADA and as amended by the ADAAA.

39.   Defendant knew that Plaintiff was disabled, had a record of a disability, and/or perceived him as disabled.

40.   Despite his disability, Plaintiff was able to perform the essentials functions of his job with or without a reasonable accommodation. Accordingly, Plaintiff was an "otherwise qualified" individual.

41.   Defendant discriminated against Plaintiff because of his disability by taking the following non-exhaustive list of actions, including, but not limited to:  (1) denying his reasonable accommodation(s); (2) revoking and refusing to permit Plaintiff utilization of a private office or sufficient space for daily and regular personal maintenance of his disability; (3) reducing or changing Plaintiff's job duties; (4) denying Plaintiff access to an ADA compliant restroom; and (5) otherwise treating him less favorably than similarly situated employees who after reasonable opportunity for discovery are not disabled, actual or perceived, nor have a record of a disability.

42.   As such, Defendant has violated 42 U.S.C. § 12101, *et seq.*, by discriminating against Plaintiff based on his actual or perceived disabilities and/or his record of being disabled.

43.   As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to

humiliation, emotional distress, the loss of benefits to which he was entitled, and other terms, privileges, and conditions of employment for which Defendant is liable.

44. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for punitive damages, and reasonable attorneys' fees and costs, declaratory and injunctive relief, pre- and post-judgment interest, and other relief under the ADA.

## COUNT II
### (ADA – Failure to Engage in the Interactive Process and/or Provide Reasonable Accommodation - 42 U.S.C. § 12101, *et seq.*)

45. All of the preceding paragraphs are realleged as if fully rewritten herein.

46. At all times relevant herein, Plaintiff was disabled, or regarded as disabled, as defined in 42 U.S.C. § 12112, *et seq.*, of the ADA and ADAAA, because he suffers from a physical impairment that substantially limits his ability to perform several major life activities and/or major life functions, including but not limited to walking, standing, bending, lifting, and grasping/use of his hands.

47. Despite his physical impairment, Plaintiff was able to perform the essential functions of his job of Child Life Coordinator in the Child Life Department with or without a reasonable accommodation. Accordingly, Plaintiff was an "otherwise qualified" individual.

48. Defendant knew Plaintiff was disabled and/or regarded him as disabled.

49. Defendant discriminated against Plaintiff by taking the following non-exhaustive list of actions: (1) failing to meaningfully engage in the interactive process; (2) failing to accommodate and/or failure of its ongoing duty to accommodate him; and/or (3) treating Plaintiff less favorably in the terms and conditions of employment than similarly situated employees who do not suffer from a disability, actual or perceived, or who did not request reasonable accommodations.

50.   Plaintiff's request for reasonable accommodations did not cause, and Defendant did not allege, an undue hardship.

51.   As such, Defendant violated the ADA by failing to accommodate Plaintiff's disability and engage in a good faith interactive process to determine an objectively reasonable accommodation for his disability. *See* 29 C.F.R. § 1630.2(o).

52.   As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer humiliation, emotional distress, economic and non-economic damages as outlined herein.

53.   Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages, reasonable attorneys' fees, costs, declaratory and injunctive relief, and other relief available under the ADA.

<u>**COUNT III**</u>
**(ADA Retaliation – 42 U.S.C. § 12101, *et seq.*)**

54.   All of the preceding paragraphs are realleged as if fully rewritten herein.

55.   Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages, reasonable attorneys' fees, costs, declaratory and injunctive relief, and other relief available under the ADA.

56.   Plaintiff engaged in protected activity by requesting a reasonable accommodation under the ADA.

57.   The request by Plaintiff for a private office and/or otherwise suitable and functional office space was reasonable because Defendant previously provided Plaintiff with this accommodation for years and such a request permitted him the ability to perform the essential functions of his position.

58.    Rather than accommodate Plaintiff, Defendant retaliated against Plaintiff by taking the following non-exhaustive list of actions against Plaintiff, including, but not limited to:  (1) denying his reasonable accommodations; (2) refusing to engage or otherwise continue in its duty to meaningfully participate in the interactive process with Plaintiff concerning his requested accommodations; (3) delaying the implementation of a reasonable accommodation to Plaintiff needlessly and forcing him to utilize a shared office space without access to an ADA compliant restroom or office; and (4) reducing his job duties and/or otherwise treating him less favorably than similarly situated employees who after reasonable opportunity for discovery are not disabled, actual or perceived, nor have a record of a disability.

59.    Given Plaintiff's unblemished work history and the timing of the refusal to accommodate Plaintiff, as described herein, it is reasonable to infer that the reason for Defendant's retaliatory conduct was because of Plaintiff's protected activity.

60.    By Defendant's foregoing omissions and commissions, Defendant has violated the ADA and unlawfully retaliated against Plaintiff for engaging in protected activity and caused Plaintiff physical harm.

61.    The Defendant's foregoing actions were willful and/or taken with a conscious disregard for the rights of Plaintiff, causing him damages, including but not limited to: exacerbating his disability, stress, anxiety, humiliation, embarrassment, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

62.    Plaintiff is entitled to recover from Defendant his actual damages, interest thereon, punitive damages, attorneys' fees, costs, and other relief available under the ADA.

## COUNT IV
### (Violations of Title III of the ADA – 42 U.S.C. § 12181, *et seq.*)

63.    All the preceding paragraphs are realleged as if fully rewritten herein.

64.    Defendant's Toledo Hospital is a public accommodation and service establishment, and as such, it must be, but is not, in compliance with the ADA and the Americans with Disabilities Act Accessibility Guidelines ("ADAAG").

65.    As described herein, Plaintiff has been and will continue to be denied full and equal enjoyment of the goods, services, facilities, privileges, and advantages of Defendant's Toledo Hospital, where he is employed, on the basis of his disability due to Defendant's failure to comply with Title III of the ADA and its accompanying regulations, as prohibited by 42 U.S.C. § 12181, *et seq*.

66.    As such, Defendant will continue to discriminate against Plaintiff and others with disabilities unless and until it is compelled to remove all physical barriers that exist at Defendant's Toledo Hospital, in order to make the facility accessible and usable by all persons with disabilities, including Plaintiff. Specifically, the restroom closest to Plaintiff's workspace in the Child Life Department is presently not compliant with the ADA and ADAAG, including but not limited to: (1) The water closet's seat fails to comply with the ADA's height requirement for wheelchair access; (2) the latch side clearance to open the restroom door from inside fails to comply with the ADA's requirement for wheelchair access; (3) the outward swinging door of the toilet compartment is not wheelchair accessible in accordance with the ADA; and, (4) the restroom itself fails to be navigable for a wheelchair.

67.    The Plaintiff, as well as those similarly situated, is presently without adequate remedy at law and is damaged by irreparable harm due to the extent of Defendant's deficient compliance with Title III of the ADA. As such, Plaintiff reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendant is required to remove the physical barriers, dangerous conditions, and ADA violations at the hospital, including but not limited to those set forth herein.

68.   Pursuant to 42 U.S.C. § 12187, Plaintiff requests that the Court issue an injunction requiring Defendant to make such alterations as are legally required to provide full and equal enjoyment of the goods, services, facilities, privileges, and advantages of Toledo's Hospital to disabled persons. In connection with that relief, Plaintiff seeks injunctive relief, remediation, and reasonable attorney's fees and costs of maintaining this action.

## COUNT V
### (FMLA Interference with Rights – 29 U.S.C. § 2615, *et seq.*)

69.   All the preceding paragraphs are realleged as if fully rewritten herein.

70.   At all times relevant, Plaintiff is a person employed by Defendant other than in domestic service for at least twelve (12) months and for at least 1,250 hours of service during the twelve (12) months before Defendant interfered with Plaintiff's FMLA rights as described above.

71.   At all times relevant, Defendant is an "employer" as defined by the FMLA under 29 U.S.C. § 261(4)(A)(ii)(I) because it is engaged in commerce or in any industry affecting commerce that employs or employed at least fifty (50) or more employees at or within a 75-mile radius of the Plaintiff's worksite for each working day during each of 20 or more calendar workweeks in the year of or the calendar year preceding the events giving rise to this cause of action.

72.   Defendant interfered with Plaintiff's FMLA rights by, among other things, forcing him to use FMLA leave instead of providing necessary and reasonable accommodations, including but not limited to an ADA compliant office space, and/or an ADA compliant restroom.

73.   Defendant interfered with Plaintiff's FMLA rights by, among other things, forcing him to use FMLA leave instead of providing necessary and reasonable accommodations, which resulted in physical harm to Plaintiff and necessitating FMLA leave.

74.    But for Defendant's unlawful actions, Plaintiff did not need to utilize FMLA leave. Plaintiff now has less available FMLA hours to utilize when he actually requires FMLA leave to care for his or his family members' serious health conditions.

75.    By engaging in the foregoing conduct, Defendant has interfered with, restrained, and/or denied Plaintiff's exercise of or attempt to exercise his FMLA rights, in violation of 29 U.S.C. § 2615(a)(1).

76.    Defendant's conduct was willful in its violations of the FMLA.

77.    As a direct a proximate result of Defendant's actions, Plaintiff has suffered damages, in accordance with 29 U.S.C. § 2617(a), and entitling him to equitable relief and to recover double his actual damages in liquidated damages, interest, his attorneys' fees, and costs.

## COUNT VI
### (Disability Discrimination – Ohio Revised Code § 4112.02)

78.    All of the preceding paragraphs are realleged as if fully rewritten herein.

79.    At all times relevant herein, Plaintiff was disabled, had a record of being disabled, and/or was regarded as being disabled as defined under Chapter 4112, *et seq.*

80.    Defendant knew that Plaintiff was disabled, had a record of being disabled, and/or regarded him as disabled.

81.    Despite his physical impairment, Plaintiff was able to perform the essential functions of his job of Child Life Coordinator in the Child Life Department with or without a reasonable accommodation. Accordingly, Plaintiff was an "otherwise qualified" individual.

82.    Defendant discriminated against Plaintiff by taking the following non-exhaustive list of actions: (1) failing to engage in the interactive process; (2) failing to accommodate and/or failure of its ongoing duty to accommodate him; and/or (3) treating Plaintiff less favorably in the terms and conditions of employment than similarly situated employees who do not suffer from a

disability, actual or perceived, or who did not request reasonable accommodations, including but not limited to reducing or changing Plaintiff's job duties.

83. Plaintiff's request for reasonable accommodations did not cause undue hardship on Defendant.

84. As such, Defendant violated the ADA by failing to accommodate Plaintiff's disability and engage in a good faith interactive process to determine an objectively reasonable accommodation for his disability.

85. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages as outlined herein.

86. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages, reasonable attorneys' fees, costs, declaratory and injunctive relief, and other relief.

87. By Defendant's foregoing omissions and commissions, Defendant has violated Ohio Revised Code § 4112.02.

88. The Defendant's foregoing actions were taken with a conscious disregard for the rights of Plaintiff, causing Plaintiff to lose employment benefits, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses entitling him to reinstatement, and to recover his actual damages, interest thereon, punitive damages, attorneys' fees, costs, and other relief available under Chapter 4112.

## COUNT VII
**(Failure to Engage in Interactive Process and/or Provide Reasonable Accommodation - Ohio Revised Code § 4112.02, *et seq.*)**

89. All of the preceding paragraphs are realleged as if fully rewritten herein.

90.   At all times relevant herein, Plaintiff was disabled or regarded as disabled as defined in Chapter 4112 because he suffered from a physical impairment that substantially limits his ability to perform several major life activities and/or major life functions.

91.   Despite his physical impairment, Plaintiff was able to perform the essential functions of his job of Child Life Coordinator in the Child Life Department with or without a reasonable accommodation. Accordingly, Plaintiff was an "otherwise qualified" individual.

92.   Defendant knew Plaintiff was disabled and/or regarded him as disabled.

93.   Defendant discriminated against Plaintiff by taking the following non-exhaustive list of actions: (1) failing to engage in the interactive process; (2) failing to accommodate and/or failure of its ongoing duty to accommodate him; and/or (3) treating Plaintiff less favorably in the terms and conditions of employment than similarly situated employees who do not suffer from a disability, actual or perceived, or who did not request reasonable accommodations, including but not limited to reducing or changing Plaintiff's job duties.

94.   Plaintiff's request for reasonable accommodations did not cause undue hardship on Defendant.

95.   As such, Defendant violated Chapter 4112 by failing to accommodate Plaintiff's disability and engage in a good faith interactive process to determine an objectively reasonable accommodation for his disability.

96.   As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages as outlined herein.

97.   Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, back pay, punitive damages, reasonable attorneys' fees, costs, declaratory and injunctive relief, pre- and post-judgment interest, and other relief under Ohio law.

## COUNT VIII
### (Retaliation - Ohio Revised Code § 4112.02(I))

98.  All of the preceding paragraphs are realleged as if fully rewritten herein.

99.  Plaintiff engaged in protected activity by requesting reasonable accommodations under Ohio law.

100. Defendant knew that Plaintiff engaged in protected activity.

101. Once Plaintiff engaged in the foregoing protected activity, rather than accommodate Plaintiff, Defendant retaliated against Plaintiff by taking the following non-exhaustive list of actions against Plaintiff, including, but not limited to:  (1) denying his reasonable accommodations; (2) refusing to engage or otherwise continue in its duty to participate in the interactive process with Plaintiff concerning his requested accommodations; (3) delaying the implementation of a reasonable accommodation to Plaintiff needlessly and forcing him to utilize a shared office space without access to an ADA compliant restroom or office; and (4) reducing his job duties and/or otherwise treating him less favorably than similarly situated employees who after reasonable opportunity for discovery are not disabled, actual or perceived, nor have a record of a disability, including but not limited to reducing or changing Plaintiff's job duties.

102. Given Plaintiff's unblemished work history and the timing of the refusal to accommodate Plaintiff, as described herein, it is reasonable to infer that the reason for Defendant's retaliatory conduct was because of Plaintiff's protected activity.

103. By Defendant's foregoing omissions and commissions, Defendant has violated Ohio Revised Code § 4112.02(I).

104. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to

emotional distress and the loss of compensation, benefits and other terms, privileges, and conditions of employment for which Defendant is liable.

105. Defendant's foregoing actions were taken with a conscious disregard for the rights of Plaintiff, causing Plaintiff to lose employment benefits, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses and entitling him to recover his actual damages, interest thereon, punitive damages, attorneys' fees, costs, and other relief available under Ohio Revised Code Chapter 4112.

VI. **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that this Court enter judgment against Defendant, as follows:

(a) Order that Defendant provide Plaintiff with a reasonable accommodation, including a private office and an ADA compliant restroom without barriers to access;

(b) Order Defendant to pay monetary relief in an amount sufficient to compensate Plaintiff for his emotional distress, including pain and suffering;

(c) An Order for declaratory judgment that Defendant's actions as complained of herein violate Title I and III of the ADA, the FMLA, and Ohio law;

(d) Awarding Plaintiff costs and reasonable attorneys' fees associated with this action;

(e) Ordering Defendant to pay Plaintiff his compensatory damages;

(f) Ordering Defendant to pay punitive damages;

(g) Ordering Defendant to pay pre-judgment interest and post-judgment interest; and

(h) Directing such other and further relief as the Court may deem just or appropriate.

Respectfully Submitted,

**BRYANT LEGAL, LLC**

*/s/ Matthew B. Bryant*
Matthew B. Bryant (0085991)
3450 W Central Ave., Suite 370
Toledo, Ohio 43606
Telephone: (419) 824-4439
Fax: (419) 932-6719
Email: mbryant@bryantlegalllc.com

*/s/ Daniel I. Bryant*
Daniel I. Bryant (0090859)
1550 Old Henderson Road, Suite 126
Columbus, Ohio 43220
Telephone: (614) 704-0546
Fax: (614) 573-9826
Email: dbryant@bryantlegalllc.com

**The Knoll Law Firm, LLC**

*/s/ Laren E. Knoll*
Laren E. Knoll (0070594)
7240 Muirfield Drive, Suite 120
Dublin, Ohio 43017
Telephone: (614) 372-8890
Fax: (614) 452-4580
Email: lknoll@knolllaw.com

*Attorneys for Plaintiff*

## <u>JURY DEMAND</u>

Plaintiff requests a trial by a jury of eight (8) persons.

*/s/ Matthew B. Bryant*
Matthew B. Bryant (0085991)

*Attorney for Plaintiff*